UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA BAEZ,

    Petitioner,

v.

MILLICENT WARREN,

    Respondent.

CASE NO. 2:11-13552
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

Pamela Baez, ("petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, petitioner challenges her conviction for armed robbery, M.C.L.A. 750.529; and carjacking, M.C.L.A. 750.529a. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner pleaded no contest to the above offenses in the Wayne County Circuit Court. In exchange for her plea, the Wayne County Prosecutor agreed to a sentence of 10-30 years in prison and further agreed to dismiss a fourth felony habitual offender charge against petitioner. Petitioner's counsel indicated that petitioner was pleading no contest because she could not remember the incident. (Tr. 12/21/2009, pp. 3-4). Prior to entering the plea, petitioner signed a "Settlement Offer and Notice of Acceptance" which stated the charges that she was pleading no

1

contest to, the plea and sentence agreement, and the constitutional rights that petitioner would be waiving by pleading no contest. The form specifically stated:

> "(1) If the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at trial, including the right:
> (a) to be tried by a jury
> (b) to be presumed innocent until proven guilty
> (c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty
> (d) to have the witnesses against the defendant appear at the trial
> (e) to question the witnesses against the defendant
> (f) to have the court order any witnesses the defendant has for the defense to appear at the trial
> (g) to remain silent during the trial
> (h) to not have that silence used against the defendant and
> (i) to testify at the trial if the defendant wants to testify." [1]

Prior to accepting petitioner's plea, the judge asked petitioner whether she understood that by pleading guilty to these charges, "you are automatically convicted of armed robbery and carjacking which are both life offenses. And you're agreeing to a 10 to 30 year prison sentence with the MDOC [Michigan Department of Corrections]. You understand that?" Petitioner replied; "Yes". (Tr. 12/21/2009, pp. 5-6). The judge then clarified that petitioner was pleading no contest to the charges but explained to petitioner that by making this plea, "you are not only giving up your right to a trial, you're giving up a number of other important rights all of which are listed under the notice of acceptance portion of the plea form that I'm holding in my left hand. Is this your signature?" Petitioner acknowledged that she had signed the plea form. (*Id.*, p. 6). Petitioner denied that any threats or promises other than the plea and sentence agreement had been made to induce her plea. (*Id.*, pp. 6-7). The prosecutor made out the factual basis for the plea by using testimony from the preliminary examination coupled with information from the

---

[1] "Settlement Offer and Notice of Acceptance dated December 21, 2009[this Court's Dkt. # 6-7].

2

Detroit Police Department Investigative Report, which indicated that petitioner entered the victim's vehicle and threatened the victim with a knife. Petitioner ordered the victim to drive her to another location and demanded $ 553.00 that the victim had just cashed from her disability check. Petitioner forced the victim out of her vehicle and drove off. Petitioner was later arrested by the Detroit police while driving the victim's car after the victim's daughter located petitioner and held her for the police. The victim testified at the preliminary examination and identified petitioner as her assailant. (*Id.,* pp. 7-8).

At sentencing, petitioner asked to withdraw her no contest plea, claiming that she was not guilty of the crimes. Petitioner indicated that even though she had stated at the plea hearing that she could not remember the incident, she could now remember everything because she had gone seven months without using cocaine which she claimed had previously affected her memory. Counsel indicated that petitioner was currently on medications for being bipolar. The judge rejected petitioner's motion to withdraw her plea, on the ground that petitioner had not filed a formal motion to withdraw her plea and had not presented the court with any valid basis to withdraw the plea. The court sentenced petitioner to ten to thirty years in prison. (Tr. 1/12/2010, pp. 3-7).

Petitioner's conviction and sentence were affirmed on appeal. *People v. Baez,* No. 300325 (Mich.Ct.App. November 4, 2010); *lv. den.* 489 Mich. 862; 795 N.W. 2d 25 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Was Petitioner deprived of her due process rights because her guilty plea was not intelligent, voluntary, and understanding; entered without knowledge of the proceedings in which she was involved?

II. Was it error to score 10 points for OV 3 since there was no evidence that the

victim suffered "bodily injury requiring medical treatment?"

III. Was Petitioner deprived of her right to effective assistance of counsel when counsel failed to fully advise his client of the nature of the proceedings and failed to object to inaccurate scoring?

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

4

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice

5

systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. DISCUSSION

#### A. Claim # 1. The claim involving the voluntariness of petitioner's plea.

Petitioner first claims that she did not knowingly or intelligently plead no contest because she did not understand what she was doing or that she would be giving up her right to a trial by entering her plea. Petitioner claims that she did not understand what no contest or *nolo contendere* meant and believed that this was simply a procedure that was "preliminary to a trial."

A guilty or no contest plea that is entered in state court must be voluntarily and intelligently made. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005)(citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). In order for a plea of guilty or no contest to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution,* 927 F.2d 256, 257 (6th Cir. 1991); *Shanks,* 387 F. Supp. 2d at 749. The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is

pleading guilty. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty or no contest, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty or no contest plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* A federal court will uphold a state court guilty or no contest plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty or no contest. *Shanks*, 387 F. Supp. 2d at 749. Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. *Id.*

      In the present case, the trial judge advised petitioner that the offenses that she was pleading no contest to carried a sentence of up to life in prison. Petitioner was also informed by the judge that she was pleading no contest in exchange for a dismissal of the habitual offender charge and a sentence agreement of ten to thirty years. The "Settlement Offer and Notice of Acceptance" that petitioner reviewed and signed prior to entering her plea also contained this information. The plea form that petitioner reviewed and signed explicitly indicated that if petitioner's plea was accepted by the court, "the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial," including the rights to a jury trial, to be presumed innocent until proven guilty beyond a reasonable doubt by the prosecutor, to confront the witnesses against her in court, to call witnesses on her own behalf, to remain silent, or to testify if she wanted to do so. At the time of the plea, the judge asked petitioner if she

understood that by pleading to these charges, she was "automatically convicted of armed robbery and carjacking" and was further agreeing to a 10 to 30 year sentence. The judge further asked petitioner whether she understood that by pleading no contest, she was giving her right to a trial including the rights associated with a trial that had been listed on the plea form that petitioner had signed. Petitioner acknowledged on the record that she understood that she was giving up her right to a trial by pleading no contest.

Petitioner was informed both by the trial judge on the record and in the plea form that she reviewed and signed prior to entering her plea that petitioner would be giving up her right to a trial and would be convicted if she entered a plea of no contest. Because both the trial judge and the plea form fully advised petitioner that by pleading no contest she would be giving up her right to a trial and the rights associated to a trial, petitioner's no contest plea was freely and voluntarily made. *See U.S. v. Daniel*, 74 F. App'x. 503, 504 (6th Cir. 2003).

To the extent that petitioner claims that she should be entitled to withdraw her no contest plea based on her claim of innocence, she would not be entitled to habeas relief.

The mere assertion of innocence, absent a substantial supporting record, is insufficient to overturn a guilty plea, even on direct appeal. *Everard v. United States*, 102 F. 3d 763, 766 (6th Cir. 1996). Petitioner's mere recantation of her no contest plea, without any support, would therefore be insufficient to have her plea overturned. *Id.*

Petitioner has presented no evidence to the state courts or to this Court, other than her own self-serving statement, to establish her innocence of these offenses. Petitioner is not entitled to withdraw her no contest plea. Petitioner is not entitled to relief on her first claim.

### B. Claim # 2. The sentencing guidelines claim.

Petitioner next claims that the trial court erroneously assessed ten points against her under Offense Variable 3 of the Michigan Sentencing Guidelines for causing injury to the victim that required medical treatment.

Petitioner's claim that the state trial court incorrectly scored or calculated her sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining [her] sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Petitioner's claim that the sentencing guidelines were incorrectly scored fails to state a claim upon which habeas relief can be granted. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner further alleges that the trial court judge violated her Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt when scoring her sentencing guidelines.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the U.S. Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. N.J.*, 530 U.S. 466, 490

(2000)).

Petitioner is not entitled to habeas relief on her claim. *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence within a minimum and maximum sentence. *See People v. Claypool*, 470 Mich. 715, 730, n. 14, 684 N.W.2d 278 (2004); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778 (2006)(both citing M.C.L.A. 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set a minimum sentence." *Drohan*, 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, n. 7, 666 N.W.2d 231 (2003) (citing M.C.L.A. 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool*, 470 Mich. at 730. Therefore, Michigan's indeterminate sentencing scheme is unaffected by the U.S. Supreme Court's holding in *Blakely*. *Drohan*, 475 Mich. at 164.

The holding in *Blakely* is inapplicable to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury. *Blakely*, 542 U.S. at 304-05, 308-09. The holdings in *Apprendi* and *Blakely* do not apply to a judge's factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *See also Montes v. Trombley,* 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to

laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing). As noted by the Sixth Circuit, "[T]he Sixth Amendment gives a criminal defendant the right to have a jury find any fact that increases the *maximum* sentence the defendant faces, not any fact that increases the *minimum* sentence." *Arias v. Hudson*, 589 F.3d 315, 317 (6th Cir. 2009) (citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986)) (emphasis original). Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does not violate petitioner's due-process rights or her right to a jury trial. *Montes,* 599 F.3d at 497. Petitioner is not entitled to habeas relief on any *Blakely* claim. *Id.*

### C. Claim # 3. The ineffective assistance of counsel claim.

Petitioner next claims that she was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S. Ct. at 1420. Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v.*

12

*Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Petitioner first claims that trial counsel was ineffective for failing to challenge the validity of her no contest plea on the ground that petitioner had not knowingly or intelligently entered this plea. This Court has already determined that petitioner knowingly and intelligently pleaded no contest to the charges with a full awareness of the consequences of her plea. In light of the fact that petitioner's plea was knowingly and voluntarily made, a challenge to the validity of petitioner's no contest plea would not have prevailed, therefore, counsel was not ineffective in failing to challenge the voluntariness of petitioner's no contest plea. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002).

Petitioner next claims that trial counsel was ineffective for failing to object to the scoring of Offense Variable 3 of the Michigan Sentencing Guidelines.

Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F.2d 140, 145 (6th Cir. 1988). However, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F.3d 570, 578-579 (6th Cir. 2002). The Ninth Circuit has noted, "[W]hen the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the [Supreme] Court expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 & n. 39 (9th Cir. 2005)(quoting *Strickland,* 466 U.S. at 686).

13

Because the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law regarding ineffective assistance of counsel claims in noncapital sentencing cases, so as to provide petitioner with a basis for habeas relief on her claim. *Id.*

In any event, assuming that *Strickland* applies to noncapital sentencings, petitioner is unable to show that she was prejudiced by counsel's failure to object to the scoring of Offense Variable 3, because petitioner has failed to establish that her sentence would have been different had counsel objected to the scoring of this variable. Petitioner's appellate counsel filed an appeal in which he challenged the scoring of Offense Variable 3 of the Michigan Sentencing Guidelines. The Michigan Court of Appeals and the Michigan Supreme Court both denied petitioner leave to appeal.

As the Eleventh Circuit noted, when the alleged attorney error involves the failure to object to a violation of state law that does not involve the enforcement of federal constitutional rights or interests, there is no Supreme Court case which prevents a federal court sitting in habeas review of a state court conviction from looking "to whether there is a reasonable probability that the do-over proceeding state law provides would reach a different result." *See Hammond v. Hall*, 586 F.3d 1289, 1340 (11th Cir. 2009).

In this case, the Michigan appellate courts upheld the scoring of Offense Variable 3 of the Michigan Sentencing Guidelines. Petitioner is therefore unable to show that she was prejudiced by her trial counsel's purported ineffectiveness in failing to object to the scoring of her sentencing guidelines. *See Coleman v. Curtin*, 425 F. App'x. 483, 485 (6th Cir. 2011); *cert. den.* 132 S. Ct. 848 (2011). Petitioner has offered no evidence to show that the state trial court

14

judge would have been inclined to impose a lesser sentence, thus, she is unable to show that she was prejudiced by her counsel's purported ineffectiveness in failing to object to the scoring of her sentencing guidelines. *See Spencer v. Booker*, 254 F. App'x. 520, 525-26 (6th Cir. 2007). Because an objection to the scoring of the sentencing guidelines would have been futile, counsel was not ineffective for failing to object to the scoring of Offense Variable 3. *See Harris v. U.S.*, 204 F.3d 681, 683 (6th Cir. 2000).

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.     CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: 7-20-12